UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN H. KARAMBINOS,
     Plaintiff,

     v.                                    CIVIL ACTION NO.
                                              10-10640-JLT
MICHAEL J. ASTRUE, Commissioner
Social Security Administration,
     Defendant.


**REPORT AND RECOMMENDATION RE:**
**PLAINTIFF'S BRIEF IN SUPPORT OF AN ORDER REVERSING OR REMANDING**
**THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 13);** [1]
**DEFENDANT'S MOTION FOR ORDER AFFIRMING**
**THE DECISION OF THE COMMISSIONER**
**(DOCKET ENTRY # 17)**

**July 11, 2011**

**BOWLER, U.S.M.J.**

     Pending before this court are cross motions by the parties,

plaintiff John H. Karambinos ("plaintiff") and defendant Michael

J. Astrue, Commissioner of the Social Security Administration

("Commissioner").  Plaintiff seeks to reverse the decision of the

Commissioner under 42 U.S.C. § 405(g).  (Docket Entry # 13).  The

Commissioner moves for an order affirming the denial of benefits

under 42 U.S.C. § 405(g).  (Docket Entry # 17).  On May 16, 2011,

this court held a hearing and took the motions (Docket Entry ##

13 & 17) under advisement.

---

[1]  At the May 16, 2011 hearing, this court construed the brief as
a motion.

## PROCEDURAL HISTORY

On June 16, 2008, plaintiff filed an application for social security disability insurance benefits ("DIB"). (Tr. 87-88). The Social Security Administration ("SSA") denied plaintiff's claim on August 29, 2008. (Tr. 45-47). Plaintiff requested reconsideration of his application. (Tr. 48). On October 22, 2009, a hearing was held before an administrative law judge ("ALJ"). (Tr. 20-42). The ALJ decided against plaintiff on December 18, 2009. (Tr. 4-15). The Decision Review Board ("DRB") selected the decision for review, however, the DRB did not complete its review within 90 days, as required under 20 C.F.R. § 405.420(a)(2), and the ALJ's decision became the final decision of the SSA.[2] (Tr. 1-3).

Plaintiff filed his brief in support of an order reversing or remanding the decision of the Commissioner on December 12, 2010. (Docket Entry # 13). Plaintiff submits that the ALJ's decision was not based on substantial evidence and believes the evidence supports a finding that plaintiff has an impairment or

---

[2] Under 20 C.F.R. §§ 404.981 and 416.1481 the ALJ's decision is final once the DRB denies review.

combination of impairments that meet or equal a listing.  (Docket
Entry # 13).


FACTUAL BACKGROUND

I.  Plaintiff's Medical History

In 2006, plaintiff suffered an industrial accident.
Subsequent magnetic resonance imaging ("MRI") revealed a left
paracentral neuroforminal disc protrusion annual tear with mild
left sided narrowing at L5-S1, and a disc bulge at L3-4 and L4-5.
Plaintiff had a discectomy on July 24, 2008.  (Tr. 192-193).  On
August 8, 2008, plaintiff returned to the hospital for a post
surgery follow up and complained of pains in his back and legs.
Tony Tannoury, M.D. ("Dr. Tannoury"), the attending physician,
however, found that plaintiff was improving significantly.  (Tr.
202).

Peggy Johnson, M.D. ("Dr. Johnson") saw plaintiff on August
11, 2008, to examine his mental state and found that plaintiff
was isolative, but was not a risk to himself or others.  (Tr.
543).  According to Dr. Johnson's pharmacology progress notes
from August 19, 2008, plaintiff had prescriptions for Toprol,
Lisinopril, Demadex, Zoloft, Ultram, Neurotin, Vicodin and

Colace.  (Tr. 536).  On August 20, 2008, Dr. Johnson noted that

plaintiff experienced periods of depression and plaintiff

admitted to having a gambling problem.  (Tr. 531-532).  Dr.

Johnson believed plaintiff used gambling to deal with his

feelings.  (Tr. 531-532).

On August 25, 2008, Mary Ford Clark, Psy.D. ("Clark"), a

state agency therapist, completed a psychiatric review and found

plaintiff's affective disorders were not severe.  (Tr. 487-500).

Clark also found that plaintiff had bipolar syndrome.  (Tr. 490).

The only functional limitation Clark noted at that time was a

mild difficulty in maintaining social functioning.  (Tr. 497).

Clark summarized plaintiff's depressive symptoms as including

"inergia," feelings of hopelessness, anhedonia[3] and passive

suicidal ideation but that none of these symptoms met or equaled

a listing.  (Tr. 499).

Plaintiff returned to Dr. Johnson on September 2, 2008.

(Tr. 521-525).  At that time, plaintiff reported improvement with

his moods after taking the medications.  (Tr. 521).  On September

30, 2008, plaintiff saw Ewige Berrouet ("Berrouet"), a licensed

---

[3]  Anhedonia refers to the total loss of feeling of pleasure in
acts that normally give pleasure.  William A.N. Dorland,
Dorland's Illustrated Medical Dictionary, p. 90 (2003).

social worker.  (Tr. 514-517).  Berrouet observed a decrease in plaintiff's peer activity and energy levels and an increase with conflicts.  (Tr. 514).  According to Berrouet, plaintiff exhibited frustration about his pain, the effectiveness of medication and the denial of his disability insurance application.  (Tr. 515).  On October 12, 2008, plaintiff returned to Dr. Johnson and reported that he was doing better and found that the medications were working better.  (Tr. 509).

On October 30, 2008, Mark Colb, M.D. ("Dr. Colb"), reviewed the record and assessed plaintiff's residual functional capacity. (Tr. 573-580).  Dr. Colb found that plaintiff could lift 20 pounds occasionally, ten pounds frequently, stand and/or walk for about six hours in an eight hour work day, and sit for about six hours in an eight hour work day.  (Tr. 574).

On December 10, 2008, Jane Metcalf, Ph.D. ("Dr. Metcalf") completed a psychiatric review of plaintiff.  (Tr. 581-584).  Dr. Metcalf found that plaintiff had affective disorder, substance addiction disorder, autism and other pervasive developmental disorders.  (Tr. 581).  Dr. Metcalf found that these impairments were severe but she did not expect the impairments to last longer than 12 months.  (Tr. 581).  In the review, Dr. Metcalf indicated

plaintiff had depressive syndrome as characterized by psychomotor agitation, feelings of guilt or worthlessness and difficulty concentrating or thinking. (Tr. 584). Dr. Metcalf indicated in the review that plaintiff had a mild restriction of daily living, a mild difficulty maintaining social functioning, a mild difficulty maintaining concentration, persistence or pace and one or two episodes of decompensation of an extended duration. (Tr. 591).

II. <u>SSA Hearing</u>

On October 22, 2009, the ALJ held a hearing to review plaintiff's application for DIB. (Tr. 20-42). Plaintiff, who was born in 1969 and attended school through the tenth grade, testified that he worked at a bindery from 1995 to 1997 as a "machine feeder." (Tr. 24). The job required him to feed paper into the machine, lift heavy bundles and fold papers. (Tr. 25). Plaintiff testified that he worked as a stocker at multiple stores stocking shelves and was required to lift up to 100 pounds. (Tr. 26).

From 2001 until 2007, plaintiff worked in a warehouse as an "order picker." (Tr. 28). He filled orders, stocked shelves, built pallets, cleaned and went on the road as a "shotgun driver"

to help with deliveries.  (Tr. 28).  According to plaintiff, this job required constant lifting of 35 pounds or more, climbing on pallets to retrieve cases, sorting cases and stacking cases. (Tr. 29).

The ALJ asked plaintiff if he could work a full time job and in response plaintiff testified that his learning disabilities, Asperger's syndrome,[4] depression, anxiety and lower back pain would prevent him from working in a professional environment. (Tr. 30-31).  Plaintiff described his back pain as moderate to severe and that the pain was exacerbated by being on his feet, walking, going up stairs and lifting.  (Tr. 32).  To relieve the pain, plaintiff testified that he would lie down "about four or five times during the day" for "two or three hour" naps.  (Tr. 32).

Upon further questioning by his attorney, plaintiff explained that he also had sleep apnea which would affect his energy level, concentration and memory throughout the day.  (Tr. 34).  When asked about past suicide attempts, plaintiff testified that on three occasions he had attempted to commit suicide,

---

[4]  The record indicates that plaintiff was diagnosed with Asperger's syndrome but does not contain any medical evaluations of the severity of plaintiff's Asperger's syndrome.

including an attempt to slit his wrists and an attempt to overdose on medications. (Tr. 35). When he went to the hospital plaintiff was not admitted but was asked to see a psychiatrist, (Tr. 35). Plaintiff admitted he did not go to a psychiatrist because of his own "stubbornness." (Tr. 36). The most activity plaintiff claimed he was capable of was to walk ten minutes from his home to Alcoholics Anonymous ("AA") meetings. (Tr. 37).

Plaintiff also testified that he went to the hospital twice for chronic tension headaches. (Tr. 37). According to plaintiff, the headaches had recently worsened when he began physical therapy. (Tr. 37). He also explained that he had Asperger's syndrome his whole life and it affected his ability to communicate, interact with others and led to a tendency to lash out at his bosses and other people. (Tr. 38).

Jeff Goldfarb ("Goldfarb"), a vocational expert, listened to plaintiff's testimony and explained that plaintiff's past job as a machine feeder in a bindery was light and unskilled work and the warehouse position was medium and unskilled. (Tr. 39). Goldfarb testified that plaintiff may not be able to do the machine feeder job as plaintiff described in his testimony, but would be capable, even with his symptoms, to do it as described

8

in the Dictionary of Occupational Titles ("DOT") issued by the
United States Department of Labor.  According to Goldfarb,
plaintiff was still capable of jobs such as sales attendant,
store attendant and cashier, of which 61,500 jobs existed in
Massachusetts, and 1,010,000 jobs existed in the national
economy.  (Tr. 40).  When the ALJ added to a hypothetical
question that the worker in question would need two hours worth
of breaks in each eight hour work day, Goldfarb testified that
the limitation would prevent a person from performing these jobs.
(Tr. 40).  Furthermore, Goldfarb explained that a person whose
concentration was impaired in the moderate to severe level could
not enter the workforce.  (Tr. 41).  He further explained however
that impulsivity would not necessarily affect one's ability to do
lighter levels of work.  (Tr. 41).


DISCUSSION

I.  Jurisdiction and Standard of Review

     The court has the power to affirm, modify or reverse the
ALJ's decision with or without remanding the case for a hearing.
42 U.S.C. § 405(g).  The findings of the ALJ are conclusive if
supported by substantial evidence.  See Richardson v. Perales,

9

402 U.S. 389, 390 (1971); <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1ˢᵗ
Cir. 2001); <u>Manso-Pizarro v. Secretary of Health and Human
Services</u>, 76 F.3d 15, 16 (1ˢᵗ Cir. 1996).  If the ALJ ignored
evidence, misapplied the law or judged matters entrusted to
experts, however, his findings are not conclusive.  <u>Nguyen v.
Chater</u>, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999).  The ultimate
determination of disability and conflicts in the evidence is for
the ALJ, not the courts.  <u>Rodriguez v. Secretary of Health and
Human Services</u>, 647 F.2d 218, 222 (1ˢᵗ Cir. 1981); <u>Seavey v.
Barnhart</u>, 276 F.2d at 9; <u>Sanchez v. Barnhart</u>, 230 F.Supp.2d 250
(D.P.R. 2002).

       Even if the record arguably justifies a different
conclusion, this court must affirm the ALJ's decision as long as
it is supported by substantial evidence.  <u>See Rodriguez v.
Secretary of Health and Human Services</u>, 819 F.2d 1, 2 (1ˢᵗ Cir.
1987).  Substantial evidence exists if considering the evidence
as a whole, a reasonable mind could accept the ALJ's conclusion
as adequate.  <u>Musto v. Halter</u>, 135 F.Supp.2d 220, 225 (D.Mass.
2001) (citing <u>Rodriguez</u>, 647 F.2d at 222).

II.  <u>Disability Determination</u>
       The Social Security Act defines a disability as the:

> [I]nability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or has
> lasted or can be expected to last for a continuous period of
> not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Impairments must be of such severity that the claimant is not only unable to do his previous work but "'considering her age, education, and work experience, engage in any kind of substantial work which exists in the national economy.'" Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir. 1982) (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Act provides a five step evaluation process for the ALJ to determine whether the claimant's condition meets that of a disability. 20 C.F.R. §§ 404.1520 & 416.920.

Under the first step, a claimant is not disabled if he or she is currently employed. See Goodermote v. Secretary of Health and Human Service, 690 F.2d 5, 6 (1st Cir. 1982). If not currently employed, the decision maker proceeds to the second step. The second step evaluates whether the claimant has a severe impairment. See Id. A severe impairment meets the durational requirement and "significantly limits your physical ability to do basic work activities." 20 C.F.R. § 404.1509. If

the claimant does not have a severe impairment, she is not disabled.  See Goodermote, 690 F.2d at 6.

If the claimant is severely impaired, the third step applies.  At the third step, the ALJ determines whether the impairment is equivalent to one listed in Appendix 1, Subpart P, Part 404 of the Code of Federal Regulations.  20 C.F.R. § 416. If the claimant has a listed impairment or "an impairment of so serious a degree of severity," the claimant is disabled. Goodermote, 690 F.2d at 6.  If the claimant is not determined to have a listed impairment, or an impairment of such severity, the ALJ decides whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work.  See 20 C.F.R. § 404.1520(e).  Past relevant work is defined as work that the claimant has done in the last 15 years.  20 C.F.R. § 404.1560(b)(1).  The claimant is not disabled if he can do such past relevant work.  See Goodermote, 690 F.2d at 7.

At the fifth step, the ALJ evaluates whether the claimant's RFC, age, education and work experience suggest that he could perform another job in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  "Plaintiff bears the burden in the first four steps of showing that she is disabled."  Rohrberg v. Apfel, 26

F.Supp.2d 303, 306 (D.Mass. 1998). "Once the claimant has established that she is unable to return to her former employment, however, the burden shifts to the Commissioner to prove the fifth step." Id. at 306-307.

Applying the foregoing sequential analysis, the ALJ correctly found that plaintiff had not engaged in substantial gainful activity since May 21, 2007. (Tr. 9). The ALJ proceeded to the second step and correctly determined that plaintiff had severe impairments including lower back pain status post L4-5 discectomy, obesity in connection with status post discectomy, major depressive disorder and anxiety disorder. (Tr. 9). Applying the third step, the ALJ accurately found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. at 404, Subpart P, Appendix 1." (Tr. 10).

The ALJ continued to the fourth step and found that plaintiff has the RFC to perform light work:

> [E]xcept he can occasionally climb, balance, stoop, crouch
> or crawl; he can understand and remember simple,
> instructions; he can concentrate for two hours periods in an
> eight hour day on simple tasks; he can interact
> appropriately with co-workers and supervisors; he can adapt
> to changes in a work setting.

(Tr. 11).  Finally, the ALJ concluded that plaintiff was capable

of performing past relevant work as a machine feeder and, as

defined by the DOT, plaintiff's RFC did not preclude his ability

to perform this job.  (Tr. 13).

Plaintiff argues that the ALJ "relied heavily" on the

inconsistencies between plaintiff's subjective statements at the

hearing and Dr. Colb's RFC assessment.  (Docket Entry # 13).  The

ALJ gave plaintiff's testimony limited weight because the ALJ

found that the record did not support the level of disabling

impairments that plaintiff alleged in his testimony.  (Tr. 12).

After plaintiff had surgery, he returned to Dr. Tannoury for a

follow up and complained of lower back pain, but Dr. Tannoury

found plaintiff was improving significantly.  (Tr. 202).

According to the record, plaintiff did not return to the hospital

for back pain until October 21, 2009.  (Tr. 595).  The resolution

of conflicts in the evidence are for the Commissioner, not for

the doctors or for the courts.  See Richardson, 402 U.S. at 399.

The ALJ supported his findings with the RFC assessment by Dr.

Colb (Tr. 573-580) that indicated plaintiff was capable of a

range of light work.  (Tr. 12).  More weight is given to opinions

that are consistent with the record.  See 20 C.F.R. §
416.927(d)(4).

Plaintiff also argues that the ALJ failed to give proper
weight to the treatment notes of Dr. Johnson and that the ALJ
failed to address the treatment notes of Emrie Cohen, M.A.
("Cohen"), a licensed clinical psychologist.  (Docket Entry #
13).  The ALJ limited the weight afforded Dr. Johnson's opinion
because plaintiff was consistently employed from 1990 to 2007,
during which time there were no indications of a worsening of
plaintiff's conditions, Dr. Johnson's treatment notes indicated
plaintiff improved on medications and plaintiff continued to
attend AA meetings and function independently.  (Tr. 13).
Although plaintiff maintains that the ALJ failed to acknowledge
Cohen's treatment notes from August 5, 2008, Cohen's notes
contain details that would support the ALJ's finding that
plaintiff's testimony was inconsistent with the record.  (Tr.
194-201).  On August 5, 2008, plaintiff indicated to Cohen that
he woke up between 9:00 a.m. and 10:30 a.m. every day, could
prepare himself a simple breakfast, attended morning and evening
AA meetings, socialized with other AA members, watched television
and only occasionally took an hour nap because of drowsiness from

his medication.  (Tr. 195).  As far as functional capacity,

plaintiff represented to Cohen that his back pain was bearable

and Cohen found that plaintiff was mentally capable to follow

work rules for an eight hour day but limited by his ability to

relate to coworkers, deal with the public, interact with

supervisors, deal with stress, function independently, maintain

attention and maintain concentration.  (Tr. 199-200).  The ALJ

was not required to examine every medical evaluation in the

record.  See Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995) (an

ALJ need not provide a complete written evaluation of every piece

of testimony and evidence contained in the record).

Plaintiff also raises issue with the ALJ's consideration of

his daily activities in determining whether he was physically or

mentally disabled.  (Docket Entry # 13).  He also complains of

back pain and argues that the ALJ did not properly assess the

limiting effect of the pain on his ability to perform daily

activities.  (Docket Entry # 13).  The SSA regulations governing

applications for DIB recognize that an applicant's symptoms may

be more severe than objective medical evidence suggests.  See 20

C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).  A series of

considerations set forth under Avery v. Secretary of Health and

Human Services, 797 F.2d 19 (1st Cir. 1986), and listed under 20

C.F.R. § 404.1529(c)(3) are to be taken into account:

> (i) [plaintiff's] daily activities; (ii) the location,
> duration, frequency, and intensity of the pain or other
> symptoms; (iii) precipitating and aggravating factors; (iv)
> the type, dosage, effectiveness, and side effects of any
> medication taken to alleviate the pain or other symptoms;
> (v) treatment, other than medications, received to relieve
> pain or other symptoms; (vi) measures used by [plaintiff] to
> relieve pain or other symptoms; and (vii) any other factors
> relating to [plaintiff's] functional limitations and
> restrictions due to pain.

20 C.F.R. 404.1529(c)(3). Under the Avery analysis, "complaints

of pain need not be precisely corroborated by objective findings,

but they must be consistent with medical findings." Dupuis v.

Secretary of Health and Human Services, 869 F.2d 622, 623 (1st

Cir. 1989).

Here, the ALJ found plaintiff's testimony of the severity of

his symptoms inconsistent with evidence provided in the record.

(Tr. 12). The ALJ reasonably explained that:

> Despite claimant's allegation of disabling mental
> impairments, he exhibits a very strong work history,
> maintaining the same job for over six years. He did not
> seek consistent psychiatric treatment until the summer of
> 2008, at which time, he was compliant with medication and
> showing improvement. The claimant underwent a discectomy in
> the summer of 2008, and there is very little evidence after
> that date to conclude that the claimant's continued back
> pain precludes him from performing light work.

(Tr. 13). The ALJ sufficiently considered the factors set forth

in 20 C.F.R. § 404.1529(c)(3) and justifiably found plaintiff's

subjective statements regarding his symptoms were not supported

by the record as a whole. (Tr. 11-13).

Plaintiff also contends that the evidence of his impairments

supported a finding that he is disabled. (Docket Entry # 13).

The ALJ considered whether plaintiff's impairments or combination

of impairments meet or medically equal a listing under 20 C.F.R.

Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Under

Listing 1.04, the ALJ found that there was a lack of evidence to

support a disorder of the spine. (Tr. 10). Disorders of the

spine under Listing 1.04 require evidence of nerve root

compression, spinal arachnoiditis[5] accompanied by severe burning

or pains that require change in posture more than once every two

hours or pseudoclaudication[6] that limits the ability to

effectively ambulate. 20 C.F.R. Pt. 404, Subpt. P., App. 1, §

1.04. The record did not provide evidence that plaintiff's range

of motion was limited, that plaintiff suffered motor loss or that

---

[5] Arachnoiditis is the inflammation of the arachnodea mater.
William A.N. Dorland, Dorland's Illustrated Medical Dictionary,
p. 517 (2003).
[6] Claudication refers to a limping or lameness. William A.N.
Dorland, Dorland's Illustrated Medical Dictionary, p. 373 (2003).

plaintiff had any sensory or reflex loss caused by nerve root compression.  (Tr. 10).

The ALJ considered plaintiff's impairments and he determined that they did not meet or medically equal Listings 12.04 and 12.06 singly or in combination.  (Tr. 10).  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following:

> [M]arked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; repeated episodes of decompensation, each of extended duration.

(Tr. 10).  The ALJ cited the Social Security Administration's function report from September 24, 2008, to support his conclusion that the mental impairments did not meet or equal a listing.  (Tr. 150-157).  The report indicated that plaintiff maintained an apartment independently, cared for a dog, did light housework, used public transportation alone, shopped in stores and performed other daily activities.  (Tr. 150-157).  The court must affirm the ALJ's conclusion if it is based on substantial evidence, even if the record could arguably support a different conclusion.  Rodriguez, 819 F.2d at 2.

Finally, the ALJ posed a hypothetical at the hearing to the testifying vocational expert that included the characteristics of plaintiff and limitations recorded in the RFC. (Tr. 39). The vocational expert explained that the symptoms plaintiff testified to would prevent him from working as a machine feeder in the capacity plaintiff described. (Tr. 39). Plaintiff would be capable, however, of performing the job as it is defined in the DOT. (Tr. 39). According to the vocational expert these jobs exist in significant numbers in the regional and national economies. (Tr. 40).

In sum, this court must affirm the ALJ's findings if they are supported by substantial evidence. See Richardson v. Perales, 402 U.S. at 390. The ALJ properly considered the record and his decision was supported by substantial evidence. (Tr. 4-15).

CONCLUSION

In accordance with the foregoing discussion, this court RECOMMENDS[7] plaintiff's motion to reverse or remand the decision

_____

[7] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's

of the Commissioner (Docket Entry # 13) be **DENIED** and the

Commissioner's motion to affirm the decision (Docket Entry # 17)

be **ALLOWED**.


                                    /s/ Marianne B. Bowler
                                    **MARIANNE B. BOWLER**
                                    United States Magistrate Judge

---

objections within 14 days after service of the objections.
Failure to file objections within the specified time waives the
right to appeal the order.